USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/4/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHILLIP SULLIVAN, JR.,

Plaintiff,

v.

RINGLING COLLEGE OF ART AND DESIGN, INC.,

Defendants.

---

No. 19-CV-1302 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Phillip Sullivan, Jr. brings this action against Defendant Ringling College of Art

and Design, Inc., alleging violations of Title III of the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12181 *et seq.*, as well as state and municipal law. Before the Court is Defendant's

motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(2). For the following reasons, the motion is granted.

## BACKGROUND[1]

Plaintiff, who is deaf, lives in New York. Defendant, a not-for-profit corporation, is an

accredited art and design college in Florida – its principal place of business. Defendant is

---

[1] The Court draws the following facts from the complaint and affidavit of Tracy A. Wagner ("Wagner Aff.") (Dkt. 19) submitted by Defendant with its motion to dismiss. *See ESI Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 50 n.54 (S.D.N.Y. 1999) ("In considering a Rule 12(b)(2) motion, the court may consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56.").

The Court, however, will not consider the additional facts alleged in Plaintiff's brief opposing the motion to dismiss. It is a "well-settled rule that '[f]actual allegations contained in legal briefs or memoranda are [] treated as matters outside the pleading for purposes of Rule 12(b),' and, therefore, cannot be considered by the Court at the motion to dismiss stage." *Concepcion v. City of New York*, No. 05-CV-8501 (RJS), 2008 WL 2020363, at *10 (S.D.N.Y. May 7, 2008) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7065 (RA), 2019 WL 3817190, at *2 n.3 (S.D.N.Y. Aug. 14, 2019) ("[T]he Court will not consider these factual allegations raised for the first time in a brief in opposition to a motion to dismiss."). Because Plaintiff has expressly chosen to "rely on the complaint through disposition of the motion," thus not filing any affidavits or exhibits with his opposition brief, the Court will only consider what Plaintiff has alleged in his complaint. Dkt. 22 (July 3, 2019 letter from Plaintiff).

established pursuant to the laws of Florida. It does not own property, nor have an office, employee, bank account, or telephone listing in New York. Defendant is also not licensed to conduct business in New York and does not have an agent for purposes of service here.

Like many other educational institutions, however, Defendant has a website, which is available across the United States. According to Defendant, "[t]he purpose of the website is to be informational." Wagner Aff. ¶ 11. The website does not sell goods or services and does not offer online courses.

"[M]ost recently in January 2019," Plaintiff was browsing Ringling's website and "attempted to watch the video on the 'Campus Life' page of the Website." *Id.* ¶ 32. But because the website lacked closed captioning, the video was "inaccessible and not independently usable by deaf and hard-of-hearing individuals," including Plaintiff. *Id.* ¶ 32. "These access barriers," Plaintiff alleges, "denied [him] full and equal access to, and enjoyment of, the goods, benefits, and services of Defendant and the Website." *Id.* ¶ 34.

Plaintiff sued Defendant in February 2019 under the ADA, as well as under New York state and municipal laws, for "fail[ure] to make its videos accessible to individuals who are deaf or hard of hearing." *Id.* ¶ 40. In June, Defendant filed the present motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that it lacks sufficient ties to New York to be subject to this Court's jurisdiction.

## LEGAL STANDARD

"[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life Ins. Co. v. Robertson-Ceco Co.*, 84 F.3d

560, 567 (2d Cir. 1996) (citation omitted). Courts engage in a two-step analysis to resolve issues

of personal jurisdiction. *Id.* First, courts look to the forum state's long-arm statute. *See Chloé v.

Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). New York's long-arm

statute provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court
> may exercise personal jurisdiction over any non-domiciliary, or his executor or
> administrator, who in person or through an agent:
>
> (1) transacts any business within the state or contracts anywhere to supply goods or
> services in the state; or
>
> (2) commits a tortious act within the state, except as to a cause of action for defamation
> of character arising from the act; or
>
> (3) commits a tortious act without the state causing injury to person or property within
> the state, except as to a cause of action for defamation of character arising from the
> act, if he
>
>  (i)  regularly does or solicits business, or engages in any other persistent
>     course of conduct, or derives substantial revenue from goods used or
>     consumed or services rendered, in the state, or
>  (ii)  expects or should reasonably expect the act to have consequences in
>     the state and derives substantial revenue from interstate or
>     international commerce; or
>
> (4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). "[S]econd," if the long-arm statute is satisfied, courts "must assess

whether [their] assertion of jurisdiction under these laws comports with the requirements of due

process." *Metro. Life Ins. Co.*, 84 F.3d at 567 (citation omitted).

To defeat a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal

jurisdiction. Where there has been no evidentiary hearing – as is the case here – the plaintiff

need only make a *prima facie* showing "based on legally sufficient allegations of jurisdiction."

*Id.* at 566. "In evaluating whether the requisite showing has been made, [a court] construe[s] the

3

pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 162, 167 (2d Cir. 2013) (citation omitted).

## DISCUSSION

Defendant contends that this action should be dismissed for lack of personal jurisdiction because it has limited ties to New York, and that the long-arm statute thus does not confer jurisdiction.[2] Plaintiff, on the other hand, relies on Defendant's website to argue that Defendant's conduct is sufficiently pervasive and targeted to New York to satisfy both § 302(a)(1) and § 302(a)(3) of the long-arm statute.[3] The Court will address, in turn, whether – based on the factual allegations in Plaintiff's complaint – § 302(a)(1) or § 302(a)(3) confers jurisdiction. It concludes they do not.

## I.    Section 302(a)(1)

Pursuant to § 302(a)(1), "[a] court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). "New York courts define 'transact[ing] business' as purposeful activity." *Id.* "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted). Although "the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and

---

[2] Plaintiff does not argue that the Court has general jurisdiction over Defendant pursuant to New York's general jurisdiction statute. *See* N.Y. C.P.L.R. § 301.

[3] Plaintiff does not attempt to argue that Defendant's conduct satisfies either § 302(a)(2) or § 302(a)(4) of the long-arm statute. *See* Pl.'s Opp. Memo. at 8 ("Plaintiff alleges that jurisdiction is conferred over this action under [§] 302(a)(1) and (3).").

a plaintiff's injury . . . it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Licci*, 732 F.3d at 168-69 (citation omitted).

Plaintiff argues that "Defendant transacts business in New York because Defendant operates a highly interactive website." Pl.'s Opp. at 9. Whether there is personal jurisdiction based on the operation of a website depends on where the website falls on the "spectrum of interactivity." *Weiss v. Barc, Inc.*, No. 12-CV-7571 (TPG), 2013 WL 2355509, at *4 (S.D.N.Y. May 29, 2013). One judge in this district aptly summarized this spectrum:

> Passive websites are ones that are limited to making information available to users, and without more specific contact with New York there is no jurisdiction over the non-domiciliary defendant. Interactive websites knowingly transmit goods or services to users and if made available to New York residents, the activities can be sufficient for obtaining personal jurisdiction over a defendant. In between are interactive websites that allow the exchange of information between users in another state and the defendant. For these types of websites jurisdiction depends on the level and nature of the exchange.

*Id.* (citations omitted). "Because websites are 'generally speaking, equally accessible everywhere,' the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (citation omitted).

Contrary to Plaintiff's assertion, Defendant's website is not "highly interactive." Pl.'s Opp. at 9. Defendant does not sell goods or services or provide online courses via the website. *See* Wagner Aff. ¶ 11. "[B]ecause it 'does not conduct *traditional* business over the internet,'" Defendant's "website is likewise not fully 'interactive' for jurisdictional purposes." *Royalty Network Inc.*, 638 F. Supp. 2d at 419 (citation omitted). Rather, Defendant's website is primarily informational. Plaintiff acknowledges as much in his complaint: "[The website] delivers information to millions of people across the United States." Compl. ¶ 20; *see also* Pl.'s Opp. at

5

12 ("Defendant's website, while informational, is also promotional[.]"). Therefore, even if

Defendant's website is not entirely passive, it, at most, falls "in the middle of the spectrum."

*Weiss*, 2013 WL 2355509, at *4.

Without significant interactivity, "[t]he correct inquiry is whether defendant's services

were targeted at New York residents." *Coll. Essay Optimizer, LLC v. Edswell, Inc.*, No. 14-CV-

8586 (LAK), 2015 WL 5729681, at *5 (S.D.N.Y. Sept. 30, 2015). Here, those allegations are

lacking. Plaintiff's complaint does not include any allegations that either New York residents in

particular used Defendant's website or that the website was specifically targeted at New Yorkers.

Instead, it states quite the opposite: "The Website is a service and benefit offered by Defendant

throughout the United States, including New York State." Compl. ¶ 21. In his opposition brief,

Plaintiff even concedes that "Defendant's website is not explicitly targeted at New Yorkers."

Pl.'s Opp. at 11. Jurisdiction is thus lacking. As Judge Griesa stated in *Weiss v. Barc, Inc.*,

"where a website is directed at the entire United States with no evidence that defendants

manifested the intent to specifically target New York or avail themselves of the benefits of New

York law, there is no personal jurisdiction under C.P.L.R. § 302(a)(1)." 2013 WL 2355509, at

*3 ("The 'mere solicitation of business within the state does not constitute the transaction of

business within the state absent some other New York-directed activities.'").

The analysis in *Weiss* is directly applicable here. There, the plaintiff argued that the court

had personal jurisdiction over the defendant because he "engages in continuous business

activities in, and directed to the State of New York . . . by offering and providing online and

computer related services via its website." *Id.* at *1. The court rejected the contention that the

defendant's website was sufficient to establish personal jurisdiction. Describing the website as

"in the middle of this spectrum [of interactivity]," the court noted that "[i]t is not wholly passive

because it is not limited to making information available[,] [b]ut it is also not conducting traditional business over the internet because it is not selling goods or services, or charging membership fees to registered users." *Id.* at *4 (citation omitted). Even if it were sufficiently interactive, however, "[t]he only connection [the defendant's] website has to New York is it is available to its residents with an internet connection and some New York residents have registered through the website." *Id.* Thus, the court concluded that the defendant had not "purposefully and knowingly entered into or sought transactions with New York residents." *Id.*

Like in *Weiss* – even assuming *arguendo* that Defendant's website was sufficiently interactive, which the Court doubts – Plaintiff has failed to demonstrate how the website specifically sought to transact business in New York. The fact that New York residents can access an educational institution's website, which is used in part to recruit prospective students, is alone insufficient to confer personal jurisdiction. *See, e.g., Coll. Essay Optimizer, LLC*, 2015 WL 5729681, at *4 ("A website that merely has non-paying registered users located in New York is generally insufficient to establish jurisdiction under § 302(a)(1)."); *Epstein v. Univ. of the S. Pac.*, No. 14-CV-6012 (AT), 2015 WL 4002344, at *4 (S.D.N.Y. June 19, 2015) (holding that "advertising the Professor Psychology position on USP's website and in the *Chronicle of Higher Education*" did not amount to transacting business under § 302(a)(1)); *DH Servs., LLC v. Positive Impact, Inc.*, No. 12-CV-6153 (RA), 2014 WL 496875, at *8 (S.D.N.Y. Feb. 5, 2014) (concluding that a defendant has not "purposely 'avail[ed] itself of the privilege of conducting activities' within New York" by accepting donations via a website); *Starmedia Network, Inc. v. Star Media Inc.*, No. 00-CV-4647 (DLC), 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a website which residents of that state visit."

7

(citation omitted)).[4] Thus, Plaintiff's allegations that Defendant transacts business in New York based on its operation of a website does not satisfy § 302(a)(1).

Defendant acknowledges that, in addition to its website, it engages in "limited student recruiting and alumni activities" in New York. Wagner Aff. ⁋ 10. This fact does not change the Court's analysis. Hosting several alumni or recruitment events in New York – or otherwise advertising the college's offerings – does not reflect the requisite level of purposeful activity in New York to satisfy § 302(a)(1). *See, e.g.*, *Epstein*, 2015 WL 4002344, at *4 (concluding that the defendant did not transact business pursuant to § 302(a)(1) by placing advertisements for a teaching position in a magazine and on a website that both appeared in New York); *Weil v. Am. Univ.*, No. 07-CV-7748 (DAB), 2008 WL 126604, at *6 (S.D.N.Y. Jan. 2, 2008) (holding that mailing an alumni magazine to individuals in New York, in addition to the "sponsoring of alumni social events and information sessions for prospective students in New York," does not confer jurisdiction under § 302(a)(1)). Even if those activities did constitute purposeful business transactions in New York, Plaintiff's cause of action does not arise from those activities. Indeed, Plaintiff does not allege that he attended any of Defendant's events or that he was interested in attending the university. *Eades*, 799 F.3d at 168 (noting that § 302(a)(1) requires "a substantial relationship between the transaction and the claim asserted" (citation omitted)).

Accordingly, § 302(a)(1) does not confer jurisdiction here.

## II.    Section 302(a)(3)

Plaintiff also argues, in the alternative, that the Court has jurisdiction over Defendant pursuant to § 302(a)(3). To establish jurisdiction, § 302(a)(3) requires that "(1) a defendant must

---

[4] In the complaint, Plaintiff cites several cases to support his argument that venue is proper in this district because it is where "Plaintiff tried and failed to access the Website." Compl. ⁋ 14. But Plaintiff cites cases only from the First Circuit analyzing Massachusetts' long-arm statute. These cases are therefore inapposite – in addition to factually distinguishable.

have committed a tortious act outside New York, (2) the cause of action must arise from

that tortious act, and (3) the act must have caused injury to a person or property within New

York." *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 325-26 (S.D.N.Y. 2013) (citation

omitted). In addition to those three elements, the plaintiff must also demonstrate "one of 'four

alternative forms of ongoing New York activity by [the] defendant' – regularly doing business in

New York, regularly soliciting business in New York, engaging in a 'persistent course of

conduct' in New York, or deriving 'substantial revenue from goods used or consumed or

services rendered' in New York" under § 302(a)(3)(i), or "that the defendant 'expected or should

reasonably have expected the [tortious] act to have consequences in [New York],' and that

defendant 'derived substantial revenue from interstate or international commerce'" under §

302(a)(3)(ii). *Id.* at 326 (citations omitted).

Plaintiff alleges that Defendant "committ[ed] a tortious act" – the unlawful

discrimination based on Plaintiff's disability – outside of New York "because [t]hat act occurred

where Defendant operates its website" and "caus[ed] injury to Plaintiff in New York." Pl.'s

Opp. at 12-13. As Defendant notes, Plaintiff's own allegations cast doubt on whether he has

alleged that the tortious act was committed outside of New York. In the complaint, under the

section titled "Jurisdiction and Venue," Plaintiff alleges:

> [A] substantial part of the acts and omissions giving rise to Plaintiff's claim have
> occurred in the Southern District of New York. Specifically, Plaintiff attempted to
> browse and view videos on the Website in New York County. *Defendant has been and is*
> *committing the acts alleged herein in the Southern District of New York* and has been and
> is violating the rights of consumers in the Southern District of New York.

Compl. ¶ 13 (emphasis added). There is thus a substantial question as to whether § 302(a)(3)

applies because, "[b]y [Plaintiff's] own allegations, the original event that caused his purported

9

injury necessarily occurred in New York because that is the location where he viewed the website." Def.'s Reply Memo. at 6.

Assuming *arguendo* that Defendant committed the alleged tortious act outside of New York, Plaintiff's argument that § 302(a)(3) confers jurisdiction here is nonetheless unpersuasive. First, for the same reasons explained previously as to why § 302(a)(1) is not satisfied, Plaintiff has not sufficiently alleged that Defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [New York]." N.Y. C.P.L.R. § 302(a)(3)(i); *see also Weiss*, 2013 WL 2355509, at *5 (holding that, for the same reasons there is no jurisdiction over the defendant pursuant to § 302(a)(1), there is also no jurisdiction pursuant to § 302(a)(3)). The fact that Defendant operates a website, which does not sell goods or services but is available across the country "does not establish the sort of persistent course of conduct in the state fairly to require [the defendants] to answer in New York for their out-of-state actions in maintaining the website." *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 220 (2d Cir. 2004); *see also DH Servs., LLC*, 2014 WL 496875, at *12 ("That individuals in New York can continuously access – and, in a limited way, interact with – [the defendant's] website is insufficient to establish § 302(a)(3)(i) jurisdiction.").

Even if the Court were to consider that Defendant likely receives college applications from and admits New Yorkers, that still would not constitute regular business or a persistent course of conduct in New York, as Plaintiff contends. Defendant engages in that same conduct throughout the United States. Without any efforts particularly directed at New Yorkers, Defendant's conduct lacks the requisite purposeful availment of New York's benefits and laws to subject it to jurisdiction here. *See G31000 N. Am., Inc. v. Paris*, No. 14-CV-3885 (VEC), 2014

WL 6604790, at *5 (S.D.N.Y. Nov. 21, 2014) (refusing "to infer that [the defendants] are engaged in regular or persistent business in New York" based on allegations "that Defendants provide consulting services to customers headquartered in New York . . . [when] Plaintiffs have made no allegations regarding the nature or scope of this business").

As for § 302(a)(3)(ii), Plaintiff has not alleged "that [D]efendant expected or should reasonably have expected the [tortious] act to have consequences in the State." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 805 (S.D.N.Y. 2015). For conduct to be "reasonably foreseeable," there must be "evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008) (citation omitted).

Nothing in the complaint alleges that Defendant had that "purposeful New York affiliation," and that it thus should have expected to be haled into a court in New York. *Id.* "[T]he fact that the website can be viewed in New York, standing alone, does not mean that the Defendant reasonably expected that its allegedly tortious actions would have consequences in New York State." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 573 (E.D.N.Y. 2011); *cf. Energy Brands Inc.*, 571 F. Supp. 2d at 468 (noting that "[t]he mere 'likelihood or foreseeability that a defendant's product will find its way into New York'" is insufficient for jurisdiction pursuant to § 302(a)(3)(ii) (citation omitted)). Even Defendant's admission that it conducts alumni and recruitment efforts in New York is insufficient. *See* Wagner Aff. ¶ 10. Hosting those events is an activity that Defendant engages in across the United States. *See Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 628 (S.D.N.Y. 2015) ("[T]he mere characterization of Defendants' practice as 'nationwide' does not suffice to establish purposeful availment of the privilege of doing business in New York."). Should the Court accept

this allegation as sufficient to confer jurisdiction under § 302(a)(3)(ii), that would expand New York's long-arm statute well beyond its prescribed limits. Under Plaintiff's interpretation, any national educational institution would be subject to this Court's jurisdiction at any time.

Accordingly, the Court concludes that Defendant's ties to New York are so limited that the long-arm statute does not confer jurisdiction.[5]

## III.    Jurisdictional Discovery

Lastly, Plaintiff contends that, at minimum, he should be granted the opportunity for jurisdictional discovery to obtain "such information [that] is strictly within the possession of Defendant." Pl.'s Opp. at 15. Whether to grant jurisdictional discovery is within the Court's discretion. *See Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018) (citation omitted). "[C]ourts generally require that plaintiffs be given an opportunity to conduct discovery on these jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (citation omitted). The party seeking the discovery "bears the burden of showing necessity" for discovery. *Togut*, 285 F. Supp. 3d at 648 (citation omitted).

The Court denies Plaintiff's request for jurisdictional discovery. Plaintiff has not made the "threshold showing that there is some basis for the assertion of jurisdiction," *Royalty Network Inc.*, 638 F. Supp. 2d at 425 (citation omitted), or demonstrated that "additional discoverable facts [exist] that could subject [Defendant] to long-arm jurisdiction," *Coll. Essay Optimizer, LLC*, 2015 WL 5729681, at *8. Moreover, Plaintiff already had the opportunity to submit further allegations – by affidavit or exhibits with his opposition brief – to make the

---

[5] Because New York's long-arm statute does not confer jurisdiction here, the Court need not reach "the second step," which is "to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloé*, 616 F.3d at 164.

12

requisite *prima facie* showing of jurisdiction. Plaintiff, however, expressly chose not to, instead "rely[ing] on the complaint through disposition of the motion." Dkt. 22 (July 3, 2019 letter from Plaintiff). Contrary to Plaintiff's assertion, this is not an instance where there is "insufficient information to determine whether there is personal jurisdiction." Pl.'s Opp. at 15. Rather, Plaintiff is simply attempting to extend New York's long-arm statute beyond its limit.

## CONCLUSION

Accordingly, Defendant's motion to dismiss for lack of jurisdiction is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 17, and close the case.

Dated:    December 4, 2019
          New York, New York

RONNIE ABRAMS
United States District Judge